IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | : | CRIMINAL NO. _____ |
|---|---|---|
| v. | : | DATE FILED: _____ |
| TODD H. LAHR | : | VIOLATIONS:<br>18 U.S.C. § 371 (conspiracy to commit securities fraud and wire fraud – 1 count)<br>15 U.S.C. §§ 78j(b) & 78ff and 17 C.F.R. § 240.10b–5 (securities fraud – 1 count)<br>18 U.S.C. § 1343 (wire fraud – 1 count)<br>18 U.S.C. § 2 (aiding and abetting)<br>Notice of forfeiture |

## INFORMATION

### COUNT ONE
### (Conspiracy to Commit Securities Fraud and Wire Fraud – 18 U.S.C. § 371)

**THE UNITED STATES ATTORNEY CHARGES THAT:**

The Defendant, Relevant Individuals, and Entities

At all times material to this Information:

1. Defendant TODD H. LAHR ("LAHR") was a resident of Nazareth, Pennsylvania, and was a licensed attorney with an office in Allentown, Pennsylvania.

2. THL Holdings, LLC ("THL Holdings") was a Nevada limited liability company. Defendant TODD H. LAHR formed THL Holdings in or about January 2012, and was its managing member.

3. Ferran Global Holdings, Inc. ("Ferran") was incorporated in the State of Nevada in or about January 2015. Defendant TODD H. LAHR was the president and director of

Ferran. Person #1 was the Chief Executive Officer ("CEO"), chairman of the board, and treasurer of Ferran.

4. Bancorp International Group ("BCIT") was a Nevada corporation whose securities were traded on the OTC Link (formerly referred to as the "Pink Sheets"). Person #1 was the CEO and director of BCIT.

5. Cefeida, S.A. ("Cefeida") was a company incorporated in Panama in or about 2006. Person #1 was a director of Cefeida and exercised control over it. Cefeida had no known legitimate business purpose.

The Conspiracy

6. From at least in or about January 2012, through at least in or about July 2019, in the Eastern District of Pennsylvania and elsewhere, defendant

**TODD H. LAHR**

and Person #1, together and with others known and unknown to the United States, conspired to commit offenses against the United States, namely:

> (a) securities fraud, that is, unlawfully, willfully, knowingly, directly and indirectly, by use of the means and instrumentalities of interstate commerce, and the facilities of national securities exchanges, to employ manipulative and deceptive devices and contrivances by: (i) employing devices, schemes, and artifices to defraud; (ii) making untrue statements of material facts and omitting to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading;

and (iii) engaging in acts, practices, and courses of business which operated and would operate as a fraud and deceit upon any person, in connection with the purchase and sale of a security, in violation of Title 15, United States Code, Sections 78j(b) and 78ff, and Title 17, Code of Federal Regulations, Section 240.10b–5; and

(b) wire fraud, that is, knowingly and with the intent to defraud, to devise, and to intend to devise, a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and to transmit and to cause certain wire communications to be transmitted in interstate and foreign commerce, for the purpose of executing the scheme and artifice, in violation of Title 18, United States Code, Section 1343.

Purposes of the Conspiracy

7. The purposes of the conspiracy were to (a) enrich defendant TODD H. LAHR and his co-conspirators through the sale of shares of Ferran and THL Holdings, as well as promissory notes related to THL Holdings, to victim-investors located in the United States, including in the Eastern District of Pennsylvania; (b) conceal from victim-investors the true financial condition of THL Holdings, Ferran, and the entities LAHR and his co-conspirators owned and/or controlled; and (c) conceal from victim-investors the manner in which LAHR and his co-conspirators were using investor proceeds.

Manner and Means

8. Beginning in or about January 2012, defendant TODD H. LAHR and Person #1 agreed to use various purported business ventures to obtain funds from investors.

9. In or about January 2012, defendant TODD H. LAHR formed THL Holdings as a holding company through which he would raise and invest money for purported business dealings with Person #1. Thereafter, LAHR solicited investments into THL Holdings from people who were his law clients. LAHR represented to the victim-investors that he and Person #1 would use their funds to pursue various business opportunities, including mining operations in Papua New Guinea through Person #1's company, Cefeida, and obtaining shares of BCIT. LAHR falsely represented to the victim-investors that 100% of their investment dollars would be used for investment purposes. Some victim-investors were given promissory notes that purported to pay 10% annual interest, while others were given membership certificates in THL Holdings and/or common shares of entities with which LAHR was affiliated. LAHR raised a total of approximately $2,647,990 in THL Holdings from at least 20 different victim-investors.

10. From in or about February 2012 through at least in or about November 2018, defendant TODD H. LAHR made payments via wires and mails to THL Holdings noteholders in order to lull victim-investors into a sense that their funds were being used to create legitimate business returns. These "lulling payments" were the approximate equivalent of 10% per year on the amounts invested. LAHR made these payments via wires and mails to investors in THL Holdings using funds that were the proceeds from investments made by other victim-investors. Person #1 facilitated at least certain of these payments to THL Holdings noteholders knowing that the payments came from funds that were the proceeds from investments made by other victim-investors.

4

11. In or about January 2015, defendant TODD H. LAHR and Person #1 formed Ferran and solicited investments into the company in order to defraud investors of Ferran and to continue defrauding investors of THL Holdings. LAHR and Person #1 raised approximately $140,000 from four investors who had been law clients of LAHR. LAHR represented to the investors that he and Person #1 would use their funds to pursue various business opportunities, including mining operations in Papua New Guinea, as well as residential property leases in Barcelona, Spain, and London, England.

12. In or about April 2015, each of the four investors of Ferran entered into a subscription agreement to invest funds in exchange for securities of Ferran.

13. Beginning in or about January 2012, defendant TODD H. LAHR made payments to himself and others for personal expenses from accounts he controlled, in which proceeds of the scheme were deposited. LAHR transferred approximately $273,091 in investment proceeds from the THL Holdings bank accounts to his own personal accounts and via cash withdrawals. Among other things, LAHR used investor funds to pay for personal debts on his home mortgage, his child's school tuition, utilities, and a personal bank debt of $65,113.66.

14. Beginning in or about January 2012, defendant TODD H. LAHR made payments to Person #1 from accounts he controlled and which were the proceeds of the scheme.

15. Beginning in or about February 2012, defendant TODD H. LAHR made payments to entities and corporations that he and Person #1 controlled from accounts he controlled and which were proceeds of the scheme.

16. From in or about May 2015 through in or about February 2016, defendant TODD H. LAHR and Person #1 paid THL Holdings noteholders using funds that were the

proceeds of investments in Ferran without the knowledge of investors in either THL Holdings or Ferran.

17. In or about December 2016, defendant TODD H. LAHR and Person #1 paid approximately $50,000 to an investor of Ferran from monies that were raised from investors of THL Holdings.

18. From in or about January 2012 through in or about July 2019, defendant TODD H. LAHR and Person #1 falsely represented to victim-investors the value of their investments in Ferran and THL Holdings and the likelihood of returns on their investment. In addition, LAHR and Person #1 omitted to state material facts to victim-investors of THL Holdings and Ferran, including that LAHR and Person #1 would receive financial benefits from the investment, that they would divert victim-investor monies for their personal benefit, and that they would divert victim-investor monies to pay monies owed to other victim-investors in the scheme.

19. For purposes of executing the scheme, defendant TODD H. LAHR used, and caused to be used, a number of interstate wires, signals, and writings, including money transfers and emails.

Overt Acts

In furtherance of the conspiracy and to accomplish its objects, defendant TODD H. LAHR, Person #1, and others known and unknown to the United States committed the following overt acts, among others, in the Eastern District of Pennsylvania and elsewhere:

1. On or about July 21, 2015, defendant TODD H. LAHR sent a wire transmission of $20,000.00 to Person #1 in Sydney, Australia.

2. On or about July 28, 2015, defendant TODD H. LAHR sent a check for $833.33 by mail to an investor of THL Holdings.

3. On or about July 28, 2015, defendant TODD H. LAHR sent a check for $416.66 by mail to an investor of THL Holdings.

All in violation of Title 18, United States Code, Section 371.

## COUNT TWO
## (Securities Fraud – 15 U.S.C. §§ 78j(b) & 78ff and 17 C.F.R. § 240.10b–5)

**THE UNITED STATES ATTORNEY FURTHER CHARGES THAT:**

1. Paragraphs 1-5 and 8-19 and the Overt Acts of Count One of this Information are realleged and incorporated by reference as though fully set forth herein.

2. From at least in or about January 2012, through at least in or about July 2019, in the Eastern District of Pennsylvania and elsewhere, defendant

**TODD H. LAHR**

did unlawfully, willfully, and knowingly, directly and indirectly, by use of the means and instrumentalities of interstate commerce and the mails, in connection with the purchase and sale of securities, use and employ manipulative and deceptive devices and contrivances in violation of Title 17, Code of Federal Regulations, Section 240.10b–5, by: (i) employing devices, schemes and artifices to defraud; (ii) making untrue statements of material facts and omitting to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (iii) engaging in acts, practices, and courses of business which operated and would operate as a fraud and deceit upon any person, in connection with the purchase and sale of a security, to wit, defendant TODD H. LAHR made and caused to be made false and misleading representations to victim-investors about the financial condition of Ferran and THL Holdings.

All in violation of Title 15, United States Code, Sections 78j(b) and 78ff, and Title 17, Code of Federal Regulations, Section 240.10b–5.

# COUNT THREE
## (Wire Fraud – 18 U.S.C. §§ 1343 and 2)

**THE UNITED STATES ATTORNEY FURTHER CHARGES THAT:**

1. Paragraphs 1-5 and 8-19 and the Overt Acts of Count One of this Information are realleged and incorporated by reference as though fully set forth herein.

### The Scheme and Artifice to Defraud

2. The United States realleges by reference Paragraph 7 of Count One of this Information as a description of the purposes of the scheme.

3. The United States realleges by reference Paragraphs 8-19 of Count One of this Information as a description of the scheme.

4. From at least in or about January 2012 through at least in or about July 2019, defendant

**TODD H. LAHR**

devised and intended to devise a scheme to defraud investors in THL Holdings, Inc. and Ferran Global Holdings, Inc., and to obtain money and property by means of false and fraudulent pretenses, representations, and promises.

### Use of Wires

5. On or about May 1, 2015, in the Eastern District of Pennsylvania and elsewhere, defendant

**TODD H. LAHR**

for the purpose of executing the scheme described above, and aiding and abetting its execution, caused to be transmitted by means of wire communication in interstate and foreign commerce certain writings, signs, signals, pictures, and sounds, to wit, an interstate wire transmission of

9

$40,000.00 from defendant TODD H. LAHR (in the Eastern District of Pennsylvania) to Person #1 (in Sydney, Australia).

All in violation of Title 18, United States Code, Sections 1343 and 2.

# NOTICE OF FORFEITURE

**THE UNITED STATES ATTORNEY FURTHER CHARGES THAT:**

1. As a result of the violations of Title 18, United States Code, Sections 371 and 1343, and Title 15, United States Code, Sections 78j(b) and 78ff, defendant

**TODD H. LAHR**

shall forfeit to the United States of America any property that constitutes, or is derived from, proceeds traceable to the commission of such offenses, including, but not limited to, the sum of approximately $273,091.

2. If any of the property subject to forfeiture, as a result of any act or omission of the defendant:

    (a) cannot be located upon the exercise of due diligence;

    (b) has been transferred or sold to, or deposited with, a third-party;

    (c) has been placed beyond the jurisdiction of the Court;

    (d) has been substantially diminished in value; or

    (e) has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 28, United States Code, Section 2461(c), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the property subject to forfeiture.

Pursuant to Title 28, United States Code, Section 2461(c) and Title 18, United States Code, Section 981(a)(1)(C).

*[signature]* for *[signature]*
WILLIAM M. McSWAIN
United States Attorney

ROBERT ZINK
Chief, Fraud Section

*[signature]* /mji
PHILIP B. TROUT
Trial Attorney, Fraud Section
Criminal Division, U.S. Department of Justice